**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SCOTT M.,**<br><br>            **Plaintiff,**<br><br>      **v.**<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>            **Defendant.** | **Civil Action No. 22-2083 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff Scott M. ("Plaintiff" or "Claimant") appeals the decision of the Commissioner of Social Security determining that he was no longer eligible for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 1 ("Compl." or "Complaint")). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner.

## I.    BACKGROUND

On August 22, 2017, Plaintiff filed an application for DIB, alleging disability beginning on October 25, 2016. (D.E. No. 4, Administrative Record ("R.") at 334–35). He claimed disability based on several impairments, including weakness and fatigue related to acute myeloid leukemia. (*Id.* at 147–51). The Administrative Law Judge ("ALJ") approved his application on August 24, 2017. (*Id.* at 152). However, in a subsequent continuing disability review conducted on June 21, 2019, Plaintiff was deemed no longer disabled as of June 20, 2019, because his medical impairments had improved and he was able to work. (*Id.* at 156–59 & 18).

On June 28, 2019, Plaintiff filed a timely request for reconsideration of the agency's decision to terminate his benefits, claiming that he was still experiencing blurred vision and being treated for skin cancer as well as his leukemia.  (*Id.* at 160–62).  On November 26, 2019, a Disability Hearing Officer affirmed the cessation of Plaintiff's benefits, finding that Plaintiff's impairment had decreased in medical severity and only minimally impacted his ability to do basic work activities.  (*Id.* at 184 & 188).  Plaintiff then requested a hearing by an ALJ.  (*Id.* at 203).  On December 17, 2020, an ALJ held a telephone hearing at which Plaintiff, a medical expert, and a vocational expert testified.  (*Id.* at 33–92; *see also id.* at 18).

On January 20, 2021, the ALJ found that Plaintiff's "disability under sections 216(i) and 223(f) of the Social Security Act ended on June 30, 2019, and the claimant ha[d] not become disabled again since that date."  (*Id.* at 25).  The ALJ ruled that Plaintiff's impairments did not meet or medically equal a listed impairment, and that Plaintiff has the residual functional capacity ("RFC") to perform his past relevant work as a vice president, which involved sedentary, light, but skilled work with "exertional demands . . . as it is generally and actually performed [that] do not exceed the exertional demands of the [RFC]."  (*Id.* at 21–25).  On February 3, 2022, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1–7).  Plaintiff then filed the instant appeal, which the Court has subject matter jurisdiction to decide under 42 U.S.C. §§ 405(g) & 1383(c)(3). The Commissioner opposes.  (D.E. No. 16 ("Opp. Br.")).  The appeal is fully briefed.  (*See* D.E. No. 12 ("Mov. Br."); Opp. Br.).

## II.     LEGAL STANDARD

### A.      Standard Governing Benefits

To qualify for DIB, a claimant must show that he is disabled within the meaning of the Act.  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Fargnoli v. Massanari,* 247 F.3d 34, 38–39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

"The Commissioner uses a five-step process when making disability determinations. . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. § 404.1520). Once disability is found, the Social Security Act and the regulations promulgated thereto require the individual to be periodically reviewed in order to continue receiving benefits. *See* 42 U.S.C. § 1382c(a)(4)(A); 20 C.F.R. § 416.994(a). In these "continuing disability reviews," the Commissioner must determine whether there has been any medical improvement in the individual's impairment—and if so, whether the medical improvement is related to the individual's ability to work and whether one or more of the exceptions to medical improvement applies. 20 C.F.R. § 416.994(b). To determine if the claimant continues to be disabled, the ALJ must follow an eight-step evaluation process. 20 CFR 404.1594; *Bryan S. v. Kijakazi*, No. 20-11145, 2022 WL 2916072, at *3–4 (D.N.J. July 25, 2022).

***Step One***. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR 404.1594(f)(1). If so, then the inquiry ends because the plaintiff is no longer disabled. *Id.*

**Step Two**.  Second, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, 20 CFR 404.1520(d), 404.1525 and 404.1526.  If the claimant does, his disability continues.  20 CFR 404.1594(f)(2)).  Otherwise, the ALJ proceeds to step three.

**Step Three**.  Third, the ALJ must determine whether medical improvement has occurred. 20 CFR 404.1594(f)(3).  Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings.  20 CFR 404.1594(b)(1).

**Step Four**.  Fourth, the ALJ must determine whether any medical improvement is related to the ability to work—"*i.e.*, whether there has been an increase in the claimant's residual functional capacity ('RFC') based on the impairments present at the time of the most recent favorable medical determination."  *Bryan S.*, 2022 WL 2916072, at *3; 20 CFR 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities.  20 CFR 404.1594(b)(3).  If the ALJ resolves that issue in the negative, the ALJ continues to step five and determines whether a specified exception exists. See 20 C.F.R. § 404.1594(f)(5).  But if the ALJ resolves that issue in the affirmative, or if certain specified exceptions exist, the ALJ must then proceed to step six.  *Id.*

**Step Five**.  Fifth, the ALJ must determine if an exception to medical improvement applies. 20 CFR 404.1594(f)(5).  There are two groups of exceptions.  20 CFR 404.1594(d) & (e).  If one of the first group exceptions applies, the analysis proceeds to the next step.  20 CFR 404.1594(f)(5). If one of the second group exceptions applies, the claimant's disability ends.  *Id.*  If none apply, the claimant's disability continues.  *Id.*

**Step Six.**  Sixth, the ALJ must determine whether all the claimant's current impairments in combination are severe.  20 CFR 404.1594(f)(6).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  *Id.*  If they do so limit, the analysis proceeds to the next step.  *Id.*

**Step Seven.**  Seventh, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform past relevant work.  20 CFR 404.1594(f)(7).  If the claimant can do so, the claimant's entitlement to benefits ends.  *Id.*  If the claimant cannot do so, then the ALJ proceeds to the final step.

**Step Eight.**  Finally, the ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience.  20 CFR 404.1594(f)(8).  If the claimant can perform other work, he is no longer disabled.  *Id.*  If the claimant cannot perform other work, his disability continues.  *Id.*

### B.    Standard of Review

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  But the "findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In this context, "the threshold for such evidentiary sufficiency is not high."  *Id.*  The substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry.  *Id.* at 1157.  "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S.

Ct. at 1154.  And although substantial evidence requires "more than a mere scintilla, it need not

rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir.

2004).

Importantly, the Court is bound by the ALJ's findings of fact that are supported by

substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v.

Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Where evidence in the record is susceptible to more

than one rational interpretation, [the Court] must accept the Commissioner's conclusions."  *Izzo v.

Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006).  Thus, the Court is limited in its review

because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."

*Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  Finally, while failure to meet the

substantial evidence standard normally warrants remand, such error is harmless where it "would

have had no effect on the ALJ's decision."  *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir.

2003).

## III.    THE ALJ's DECISION

First, the ALJ found that Plaintiff did not engage in substantial gainful activity between the

alleged onset date of his disability, October 2016, and the date of the ALJ's January 2021 decision

revoking DIB.  (R. at 20).  Next, the ALJ determined that "since June 30, 2019, the claimant has

had the following medically determinable impairments: acute myeloid leukemia in remission,

status post bone marrow transplant; ocular graft versus host disease (GVHD); ptosis[1] of left eye;

and dry eye syndrome."  (*Id.*).  The ALJ then found that since June 30, 2019, Plaintiff "has not had

an impairment or combination of impairments which met or medically equaled the severity of a[]

---

[1]       Ptosis is the drooping of the upper eyelid over the eye.

[listed impairment]."  (*Id.*).  The ALJ considered Listing 13.06A (for acute leukemia) and the Listings in 2.00 (for visual impairments).  (*Id.*).  The ALJ found that Plaintiff's acute myeloid leukemia did not meet or medically equal Listing 13.06A because the listing requires that "any residual impairments" that are "at least [twenty-four] months from the date of diagnosis or relapse, or at least [twelve] months from the date of bone marrow or stem cell transplantation, whichever is later . . . be evaluated under the criteria for the affected body system," and Plaintiff's residual impairments do not meet the visual listings.  (*Id.*).  The ALJ found that Plaintiff's impairments do not meet the visual listings in 2.00, including Listings 2.02 (loss of central acuity), 2.03 (contraction of the visual field), or 2.04 (loss of visual efficiency) "because the evidence does not indicate that the claimant's visual acuity or visual field levels meet the requirements specified in these Listings."  (*Id.*).

Next, the ALJ determined that "[m]edical improvement occurred on June 30, 2019."  (*Id.*).  By that date, Plaintiff's leukemia was in remission and "[h]e was in good health, reported feeling generally well, and was increasing his level of activity; however, he also experienced continuing fatigue and loss of muscle mass, though this was improving."  (*Id.* at 21).  The ALJ found that the medical improvement was related to Plaintiff's ability to work because "by June 30, 2019, the claimant's [original] impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the" initial disability determination.  (*Id.*).

Because the ALJ found that the medical improvement was related to Plaintiff's ability to work, the ALJ then skipped to Step Six, and determined that "[s]ince June 30, 2019, the claimant . . . continued to have a severe impairment or combination of impairments," including "acute myeloid leukemia in remission, status post bone marrow transplant, ocular GVHD, ptosis of left eye, and dry eye syndrome."  (*Id.*).  The ALJ found these impairments to be severe "because they

significantly limit the claimant's ability to do basic work activities and have lasted or can be

expected to last at least twelve months." (*Id.*). But the ALJ found Plaintiff's basal cell carcinoma

to be non-severe "because there [wa]s no evidence in the record that it ha[d] more than a minimal

effect on the claimant's ability to do basic work activities." (*Id.*).

Regarding RFC, the ALJ found that, based on the impairments present since June 30,

2019, Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he
> can never climb ladders, ropes, or scaffolds; no exposure to hazards
> such as unprotected heights and dangerous machinery; occasionally
> operate a motor vehicle; and to the extent that the claimant is reading
> or looking at a computer, he would have to look away from the
> screen or material for 30 to 60 seconds every 20 to 30 minutes.
> Additionally, the claimant [can] perform jobs that do not require
> binocular vision (use of both eyes), meaning that the individual can
> perform tasks that could be accomplished with a patch or bandage
> on his left eye; can perform jobs that do not require peripheral vision
> on the left side; and he can perform job duties that do not require
> precise depth perception such as threading a needle.

(*Id.*). In fashioning the RFC, the ALJ "considered all symptoms and the extent to which these

symptoms can reasonably be accepted as consistent with the objective medical evidence and other

evidence, based on the requirements of 20 CFR 404.1529" as well as "the medical opinion(s), prior

administrative medical finding(s), and additional relevant evidence in accordance with the

requirements of 20 CFR 404.1520c." (*Id.* at 22). The ALJ considered Plaintiff's allegation that

he suffered from fatigue and loss of muscle mass, but also noted that his muscle mass was

improving and that he could drag a 28-pound bag of dog food. (*Id.* at 23). Similarly, the ALJ

considered Plaintiff's ptosis, steroid-induced cataracts, GVHD, and difficulty reading. (*Id.* at 22–

23). However, the ALJ found that Plaintiff "was receiving reasonable and consistent treatment for

his impairments, including medicated eye drops and surgery, which provided him with

improvement in his symptoms" and that no "opinions from treating or examining physicians

8

indicat[e] that the claimant is currently disabled." (*Id.* at 24). As such, the ALJ found, relying on a vocational expert's testimony, that Plaintiff could return to his past relevant work as a vice president. (*Id.*). Specifically, the ALJ concluded that "[t]his work has not required the performance of work-related activities precluded by the claimant's residual functional capacity based on the impairments present since June 30, 2019." (*Id.*).

## IV.   DISCUSSION

Plaintiff challenges the ALJ's determination that he is able to return to his past work. (Mov. Br. at 13–17). Specifically, Plaintiff argues that the ALJ erred by (i) failing to address Plaintiff's visual limitations and fatigue and (ii) mischaracterizing Plaintiff's past work. (*Id.*). In opposition, the Commissioner argues that the ALJ considered all evidence of record and that the ALJ's decision is supported by substantial evidence. (Opp. Br. at 1–2 & 11–16). The Court addresses each argument in turn.

### i.   Visual Limitations and Fatigue

First, Plaintiff argues that the ALJ "disregarded medical evidence indicating [Plaintiff's] symptoms resulting from [graft versus host] disease significantly interfered with his ability to read," as well as Plaintiff's testimony regarding his variable vision and difficulty reading as a result of his graft versus host disease. (Mov. Br. at 13). Plaintiff contends that his visual problems were not stable by June 30, 2019, and points to Dr. Landmann's medical documentation of Plaintiff's obscured vision from his drooping left eyelid as well as his 20/70 vision in his right eye from October 2019. (*Id.* at 13–14). Plaintiff further highlights Dr. Ponce-Contreras' November 2019 diagnosis of cataracts resulting from his use of steroids to treat his graft versus host disease, as well as Dr. Ponce-Contreras' April 2021 confirmation that his "vision was worse during acute attacks of ocular [graft versus host disease]." (*Id.* at 13 & 15). Plaintiff argues that while the ALJ

acknowledged Plaintiff's 20/70 visual acuity in his right eye with correction and "proposed that [Plaintiff] could work while using a patch on his left eye to address a drooping eyelid in that left eye," such findings leave Plaintiff with a visual acuity of 20/70.  (*Id.*).  A person with this visual acuity, Plaintiff asserts, "would fail a standard eye test for driving and would require additional evaluation to determine whether they would be permitted to drive." (*Id.* at 15 n.9).  Plaintiff further argues that the ALJ neither explained how Plaintiff could "work on a computer more than three quarters of the workday interacting with important financial documents" with his visual acuity nor asked the vocational expert whether a person with such a visual acuity "could nonetheless effectively do [Plaintiff's] visually demanding job" as an investment banker.  (*Id.* at 15).

In opposition, the Commissioner argues that the ALJ appropriately considered the entire record, including the ptosis of Plaintiff's left eyelid as well as his 20/70 visual acuity in his right eye, noting that Plaintiff had surgery to correct both his cataracts and drooping eyelid in 2020.  (Opp. Br. at 12–13).  In fashioning the RFC, the Commissioner further argues that the ALJ properly considered the medical expert testimony of Dr. Schaffzin to the effect that Plaintiff's impairments could be addressed through limitations such as "short breaks of 30 to 60 seconds every 20 to 30 minutes," giving it significant weight.  (*Id.* at 14).

For the following reason, the Court agrees with the Commissioner: the ALJ considered the relevant evidence in formulating an RFC that is supported by substantial evidence.

A plaintiff's RFC is the most that a plaintiff can do despite his limitations.  20 C.F.R. §§ 404.1545(a) & 416.945(a).  When making an RFC determination, an ALJ is required to consider all evidence before him.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).  An ALJ need not "use particular language or adhere to a particular format in conducting [his] analysis," as long as "there is sufficient development of the record and explanation of findings to

permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Additionally, in evaluating the medical opinion evidence of record, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a) & 416.920c(a).  The regulations emphasize that "[t]he most important factors [that the ALJ and Commissioner] consider when . . . evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency."  *Id.*  The regulations further require the ALJ to articulate his "consideration of medical opinions" and include in the "determination or decision how persuasive [he] find[s] all of the medical opinions." *Tamya S. ex rel. L.S. v. Kijakazi*, No. 20-10035, 2021 WL 5757400, at *6 (D.N.J. Dec. 3, 2021) (internal quotation marks omitted).  If a plaintiff has a medically determinable impairment that could reasonably be expected to cause his alleged symptoms, the ALJ will evaluate the plaintiff's subjective complaints and allegations of disability based on the record as a whole.  *See* 20 C.F.R. § 404.1529.  "Allegations of pain and other subjective symptoms must be supported by objective medical evidence."  *Hartranft*, 181 F.3d at 362.

The ALJ's RFC determination incorporates Plaintiff's visual acuity and is supported by substantial evidence.  The ALJ conducted a thorough review of the relevant medical evidence.  (R. at 21–24).  The ALJ considered the testimony of medical expert Dr. Schaffzin, wherein he identified Plaintiff's eye impairments, including ocular GVHD, dry eye syndrome, and ptosis, and found that the impairments could be addressed with certain limitations, including: (i) short breaks of 30 to 60 seconds every 20 to 30 minutes; (ii) never climbing ladders, ropes, or scaffolds; and (iii) no exposure to hazards, heights, or dangerous machinery.  (R. at 23 & 79).  Contrary to Plaintiff's argument that the ALJ failed to explain how Plaintiff "retained the visual acuity to work

on a computer more than three quarters of the workday interacting with important financial documents" (Mov. Br. at 15), the ALJ specified that "to the extent that [Plaintiff] is reading or looking at a computer, he would have to look away from the screen or material for 30 to 60 seconds every 20 to 30 minutes." (R. at 21). The ALJ further clarified that Plaintiff has the RFC to perform jobs that do not require him to use both eyes, "do not require peripheral vision on the left side," and "do not require precise depth perception such as threading a needle." (*Id.*). In concluding that Plaintiff is able to perform past relevant work, the ALJ considered the vocational expert's testimony that an individual with these specific visual limitations would be able to perform his past relevant work, which involves work on a computer for a majority of the day. (*See id.* at 24–25 & 82–84); *cf. Sanchez v. Comm'r Soc. Sec.*, 705 F. App'x 95, 98–99 (3d Cir. 2017) (holding that the plaintiff had sufficient visual acuity to perform small products assembly where he retained 20/70 visual acuity in his better eye and is able to operate a motor vehicle alone).[2] And indeed, Plaintiff provides no specific argument regarding what his RFC should have been, or how the RFC does not adequately account for his visual acuity, failing to meet his burden to demonstrate error with the ALJ's decision. *See Markoch v. Comm'r of Soc. Sec.*, No. 20-0417, 2020 WL 7586953, at *5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, [p]laintiff does not articulate what additional restrictions should have been implemented. It is [p]laintiff's burden to establish the severity of her impairments, and [p]laintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive

---

[2]     Plaintiff adds that his testimony regarding his difficulty seeing even with his glasses was corroborated by Dr. Ponce-Contreras, who stated in an April 15, 2021 letter that "his vision was worse during acute attacks of ocular GVHD." (Mov. Br. at 13; R. at 9). This evidence does not relate to the period at issue as it is dated after January 20, 2021—when the ALJ decided Plaintiff's case. Regardless, Dr. Ponce-Contreras noted that Plaintiff's best corrected visual acuity was 20/25 in both eyes on his March 24, 2021 visit. (R. at 2 & 9).

error."); *Kuntz v. Colvin*, No. 15-0767, 2016 U.S. Dist. LEXIS 154913, at *25 (M.D. Pa. Sept. 30, 2016) ("In Reply, [p]laintiff does not cite any specific additional limitations that should have been included in the RFC. . . . [p]laintiff cannot demonstrate that any error was harmful without identifying the additional limitations the ALJ should have included in the RFC.").

Plaintiff's arguments to the contrary are not persuasive. Plaintiff argues that the ALJ did not consider medical evidence from Dr. Landmann or Dr. Ponce-Contreras indicating that his impairments hindered his ability to read. (Mov. Br. at 14–15).[3] Plaintiff alleges that the ALJ failed to take into consideration Plaintiff's ptosis, visual acuity, and cataracts, and thus had "no basis . . . to conclude that [Plaintiff] enjoyed functional vision as of June 30, 2019." (*Id.* at 15). Contrary to Plaintiff's arguments, the ALJ did not disregard this evidence. The ALJ specifically referenced the exhibit containing the Dr. Landmann and Dr. Ponce-Contreras evidence in his RFC assessment, stating that "[e]xaminations throughout the relevant period found [the claimant's] visual acuity, with correction, to be 20/70 in the right eye and 20/40 in the left eye (Ex. 20F at 2; Ex. 25F at 2; Ex. 28F at 1)" (*id.* at 22), and "[t]he limitations are supported by the objective medical findings, including the visual acuity findings and reports of blocked peripheral vision prior to surgery (Ex. 20F at 2; Ex. 25F at 2, 4; Ex. 28F at 1)" (*id.* at 24). The ALJ also considered that Plaintiff developed steroid-induced cataracts but highlighted that "he had successful cataract

---

[3]       The Record contains a letter written by Dr. Ponce-Contreras dated November 21, 2019, and medical records from Dr. Landmann's Cosmetic & Reconstructive Eyelid Surgery practice dated October 9, 2019. (R. at 1194–95). Dr. Ponce-Contreras's letter provides that Plaintiff developed cataracts from his chronic use of steroids as treatment for his graft versus host disease. (*Id.* at 1194). The letter also noted the symptoms of cataracts, including "blurry vision, faded color, difficulty seeing in bright or dimly lit rooms, double vision, a film like haze over vision, frequent eyeglass prescription changes, nearsightedness, seeing halos, reduced night vision and severe glare." (Mov. Br. at 15; *accord* R. at 1194). Additionally, Dr. Ponce-Contreras explained in the letter that Plaintiff's cataract surgery was delayed due to his "severe dry eye problem and other health problems," and that she hoped to schedule his surgery within three to six months. (R. at 1194). Exhibit 20F further contains medical records drafted by Dr. Landmann after Plaintiff's October 8, 2019 ocuplastic exam, which lists Plaintiff's visual acuity with correction as 20/70 for his right eye and 20/40 for his left eye. (*Id.* at 1195).

surgery on the left eye on February 25, 2020 and on the right eye on March 17, 2020," and that his "vision improved" following these surgeries. (*Id.* at 22).

Plaintiff also argues that the ALJ failed to address and give proper weight to Plaintiff's testimony regarding his visual limitations and fatigue. (Mov. Br. at 13). However, in making the RFC determination, the ALJ expressly considered Plaintiff's testimony. (R. at 22). For instance, the ALJ considered Plaintiff's testimony that his symptoms from the leukemia were primarily fatigue, that he was able to do things around the house, walked for exercise, but "had difficulty lifting his 28-pound bag of dog food." (*Id.*). The ALJ also found that Plaintiff's fatigue and loss of muscle mass were improving. (*Id.*). With respect to his visual limitations, the ALJ considered Plaintiff's testimony that "[h]e had difficulty [reading] even with reading glasses and he would have to use a magnifying glass" as a result of his GVHD and ptosis, and that it was sometimes "difficult to look at a computer for any length of time because he never knew when the GVHD would flare up." (*Id.* at 23). However, the ALJ noted that "[Plaintiff] was receiving reasonable and consistent treatment for his impairments, including medicated eye drops and surgery, which provided him with improvement in his symptoms." (*Id.* at 24). To the extent Plaintiff argues that the ALJ should have weighed Plaintiff's testimony more (Mov. Br. at 13–14), this argument fails because the Court cannot reweigh the record evidence. *See Chandler*, 667 F.3d at 359 (stating that "[c]ourts are not permitted to re-weigh . . . evidence"). And an "ALJ has wide discretion to weigh the claimant's subjective complaints." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). While the ALJ considered Plaintiff's testimony, he, in his discretion, gave more weight to the testimony of medical experts such as Dr. Schaffzin.

14

### ii.      Mischaracterization of Past Work

Plaintiff additionally argues that the ALJ and vocational expert's characterization of "[Plaintiff's] past work as a 'vice president' is a gross simplification of his actual duties." (Mov. Br. at 16). Although Plaintiff was indeed a vice president, Plaintiff contends that "he nonetheless was essentially an investment analyst for his customers," which required that he "prepar[e] corporate reports, audit[] reports, and perform[] monthly reconciliations." (*Id.*). Plaintiff also explained that his job necessitated interacting with a computer for more than 75 percent of the workday. (*Id.*). The Commissioner opposes, contending that Plaintiff's assertions are unsupported by any legal authority or factual proof and thus not sufficient to challenge the vocational expert's testimony. (Opp Br. at 15). For the following reasons, the Court finds that the ALJ did not mischaracterize Plaintiff's past work.

The vocational expert in this case characterized Plaintiff's past work as a vice president as set forth in the Dictionary of Occupational Titles #186.117-078. (R. at 24 & 78). Contrary to the Commissioner's assertions, Plaintiff did support his argument with several citations to the record. (Mov. Br. at 16); *see United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments." (citations omitted)). However, the Court concludes that Plaintiff's argument fails on other grounds.

When evaluating vocational evidence, the ALJ determines whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" *or* whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61. "In connection with this latter consideration, 'if the claimant

cannot perform the excessive functional demands and/or job duties actually required in the former job, but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."'"  *Monroy v. Saul*, No. 18-5638, 2020 WL 4500045, at *9 (D.N.J. Aug. 5, 2020) (citation omitted).  "Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy."  *Id.* (citation omitted).

In classifying Plaintiff's past relevant work as a vice president, the vocational expert properly relied on Plaintiff's own testimony describing his job title from the December 17, 2020 hearing at which the vocational expert was present, as well as the information in Plaintiff's file, which included a Work History Report detailing Plaintiff's past work as a vice president.  (R. at 73, 75–78, & 386–88); *see Monroy,* 2020 WL 4500045, at *9.[4]  Plaintiff points to no evidence supporting his argument that he was "essentially an investment analyst for his customers," and makes no argument regarding how his RFC specifically would prevent him from working as an investment banker.  (Mov. Br. at 16); *see Monroy*, 2020 WL 4500045, at *11.  And he does not argue that his RFC would prevent him from performing "the functional demands and job duties"

---

[4]      Plaintiff argues that "the vocational expert was not asked whether an individual with 20/70 vision could perform the visually demanding work of a[n] investment banker."  (Mov. Br. at 16).  While the ALJ did not ask the vocational expert this specific question, the expert acknowledged in his testimony that Plaintiff's work is mostly done on a computer and concluded, after considering Plaintiff's testimony and the information in Plaintiff's file, that he could return to past work.  (R. at 84).

of a vice president "as generally required by employers."  *See Monroy*, 2020 WL 4500045, at *9. Therefore, "[t]he ALJ's reliance on the vocational expert's testimony in this regard and h[is] ultimate determination . . . that Plaintiff retains the RFC to perform h[is] past relevant work as [a vice president, sedentary as generally performed, light as actually performed, and skilled,] therefore enjoys substantial support in the record."  (R. at 24); *see Monroy*, 2020 WL 4500045, at *11.

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner.  An appropriate Order accompanies this Opinion.

Dated: August 15, 2024

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
